Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle, Sr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 7442 | DATE | 4/3/2003 |
| CASE TITLE | Allman vs. McGann, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Michael Cipicchio's motion to dismiss for lack of personal jurisdiction

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Michael Cipicchio's motion to dismiss for lack of personal jurisdiction [10-1] is granted. See attached.

Charles R Norgle Sr.

(11) X [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 04 2003 date docketed | 16 |
| | Notified counsel by telephone. | docketing deputy initials | |
| X | Docketing to mail notices. | date mailed notice | |
| | Mail AO 450 form. | mailing deputy initials | |
| | Copy to judge/magistrate judge. | | |

courtroom deputy's initials

U.S. DISTRICT COURT
03 APR -3 PM 3:01

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

James Allman,
Plaintiff,

v.

Kevin D. McGann, Michael Cipicchio, and Scott D. Sullivan,
Defendants.

No. 02 C 7442

Judge Charles R. Norgle, Sr.

DOCKETED
APR 0 4 2003

## OPINION AND ORDER

Before the court is Defendant, Michael Cipicchio's ("Cipicchio") motion to dismiss Plaintiff, James Allman's ("Allman") complaint for lack of personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, Cipicchio's motion is granted.

## I. BACKGROUND[1]

Allman is seeking to recover commissions allegedly owed for work performed as an employee of a subsidiary of MCI WorldCom Network Services, Inc. ("WorldCom"). Allman, a citizen of the State of Illinois, began working for a subsidiary of WorldCom in March of 1991. Allman was employed as a major account executive and was compensated for his services by way of salary, commissions and bonuses, as set forth in MCI's Major Account Executive Compensation Plan ("the

1 The court takes the facts from Allman's amended complaint and the parties' briefs and supporting affidavits on the present motion to dismiss for lack of personal jurisdiction. Disputed facts are noted in the text.



16

Comp Plan"). Allman resigned his employment with WorldCom effective November 2, 2001. Allman alleges that at the time of his resignation, his commissions report indicated that he was owed $700,339.49, in addition to unreported commissions for October and November of 2001, an amount which WorldCom has not paid.

Initially, in order to seek redress for his grievance, Allman filed suit against WorldCom. This case was filed in the United States District Court for the Northern District of Illinois, Eastern Division, and was assigned to the Honorable Matthew F. Kennelly. See Allman v. WorldCom, Inc., docket number 01 C 9741. In that case, WorldCom filed a motion to dismiss and compel arbitration. WorldCom's motion to dismiss and compel arbitration was rendered moot as a result of Allman's motion to voluntarily dismiss the case pursuant to Federal Rule of Civil Procedure 41(a). Thereafter, Allman proceeded to arbitrate his claim; however, as a result of WorldCom's petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code, the arbitration proceedings were stayed. Impatient with the progress of his arbitration as a result of the bankruptcy stay, Allman filed the present case against various individual officers of WorldCom, including Kevin D. McGann, Michael Cipicchio, and Scott D. Sullivan (collectively "the Defendants").[2]

---

[2] At a status hearing on April 1, 2003, counsel for Allman advised the court that Defendant, Scott D. Sullivan was served with a summons and a complaint on March 17, 2003. Counsel for Allman also advised the court that Defendant, Kevin D. McGann had not been served.

The court is deciding the matter before it, as to Defendant, Michael Cipicchio, solely on jurisdictional grounds. As such, the court is not addressing the appropriateness of the complaint in light of the bankruptcy court's stay of Allman's arbitration proceedings or in light of Local Rule 40.4, dealing with reassignment of related cases. In light of this opinion, Allman should be diligent in pursuing this matter as to the remaining Defendants. See Fed. R. Civ. P. 11; see also Berwick Grain Co., Inc. v. Illinois Dept. of Agriculture, 217 F.3d 502, 504 (7th Cir.2000) (*per curiam*) (discussing Rule 11 and collecting cases).

This court initially dismissed the present case for failure to properly plead subject matter jurisdiction. Thereafter, Allman filed an amended complaint, properly pleading subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). In Count I of the amended complaint, Allman contends that the Defendants' failure to pay his final commission resulted in a violation of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq*. ("IWPCA"). Count II of the amended complaint seeks attorney fees under the IWPCA. Lastly, in Count III of the amended complaint, Allman contends that the Defendants tortiously interfered with his employment contract rights.

Returning to the facts underlying Allman's claims for relief, in regard to commissions, WorldCom maintained a commissions bank account for Allman in WorldCom's Commissions Accounting department. WorldCom regularly provided Allman with commissions reports detailing the amounts held in Allman's commissions account. Under the Comp Plan, Allman would receive a maximum of $25,000 per month from commissions, with any amount of commission in excess of $25,000 to be held in Allman's commissions bank account. In the event that Allman's commissions for a given month were less than $25,000, funds would be taken out of Allman's commissions account and applied to assure a monthly commission of $25,000. Furthermore, in the event of termination, Allman would continue to receive a maximum of $25,000 per month from commissions until his commissions account was exhausted.

Cipicchio, a citizen of the State of Mississippi, was, and is, employed by MCI as Vice President of Corporate Processing Services. Cipicchio performs his duties on behalf of WorldCom from an office located in Mississippi. In that position Cipicchio has responsibility for administering WorldCom's compensation plans and commission accounting. Prior to Allman's resignation,

Cipicchio caused an audit to be performed on the accounts of approximately 50 major account executives, including Allman. Allman alleges that the Defendants directed WorldCom to "intentionally and purposefully" freeze many of the commission bank accounts that had been the subject of the internal audit, including Allman's account. Allman contends that the Defendants knew of WorldCom's obligation to pay Allman under the Comp Plan and that the Defendants purposefully prevented the payment of Allman's final compensation, resulting in a violation of the IWPCA and tortious interference with Allman's employment contract rights.

Cipicchio has responded to Allman's amended complaint by filing a motion to dismiss for lack of personal jurisdiction, which the court now addresses.

## II. STANDARD OF DECISION

Once a defendant has challenged a court's exercise of personal jurisdiction, through a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction over a defendant is proper. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1995). "In deciding a motion to dismiss for lack of personal jurisdiction, the court may receive and consider affidavits from both parties." Glass v. Kemper Corp., 930 F. Supp. 332, 337 (N.D. Ill. 1996) (citing Turnock v. Cope, 816 F.2d 332, 333 (7th Cir.1987)). "The court resolves factual disputes in the pleadings and affidavits in favor of the plaintiff, but takes as true facts contained in the defendant's affidavit that remain unrefuted by the plaintiff." Id. (citing Nelson v. Park Industries, Inc., 717 F.2d 1120, 1123 (7th Cir.1983)).

## III. DISCUSSION

"A federal district court exercising diversity jurisdiction has personal jurisdiction, of course, 'only if a court of the state in which it sits would have such jurisdiction.'" RAR, Inc. v. Turner

Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997) (citing Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995). This federal district court, sitting in diversity, will have personal jurisdiction over a non-resident defendant only where: 1) Illinois statutory law properly grants jurisdiction; 2) the exercise of personal jurisdiction would not violate Illinois constitutional law due process requirements; and 3) the exercise of personal jurisdiction would not violate the United States constitutional law due process requirements. See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000).

In this case, the three inquiries may be collapsed into one, with an analysis of whether the exercise of personal jurisdiction would violate the United States constitutional law due process requirements as the pivotal inquiry. See Klump, 71 F.3d at 1371 (indicating "if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States Constitution have been met, and no other inquiry is necessary"); see also Rollins v. Ellwood, 565 N.E.2d 1302, 1315 (Ill. 1990) (indicating "Illinois' long-arm statute . . . may well restrict the power that the courts of this State have to bring nonresidents before them to a greater extent than do the Federal due process clause and the 'minimum contacts' standard developed over the years by the [United States] Supreme Court"); see also RAR, 107 F.2d at 1276 (indicating that "Illinois courts have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction").

As elucidated by International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny, to satisfy the requirements of federal due process, a non-resident defendant must have established sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. See generally RAR, 107 F.2d at 1277.

To establish that such "minimum contacts" have been established, "[i]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In determining whether sufficient "minimum contacts" exist, courts consider whether a defendant could "reasonably anticipate being haled into court" in Illinois. See World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 297 (1980). This requirement is satisfied when the defendant intentionally directs his activities at forum state residents and the litigation arises from injuries allegedly caused by those activities. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

*A. Allman's IWPCA Claim for Relief*

One of Allman's arguments for subjecting Cipicchio to the personal jurisdiction of a court in Illinois is premised on the Illinois Wage Payment and Collection Act, which provides, *inter alia*: "Any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 Ill. Comp. Stat. 115/13 (2003). Allman argues that because Cipicchio knowingly permitted WorldCom to withhold Allman's final compensation, Cipicchio is deemed to be Allman's employer under the IWPCA, and therefore subject to personal jurisdiction in Illinois because WorldCom would be subject to personal jurisdiction in Illinois. However, the court cannot accept Allman's personal jurisdiction syllogism in light of existing federal due process jurisprudence.

The present case is virtually indistinguishable from other cases decided in this district dealing with the IWPCA and the issue of personal jurisdiction over non-resident officers and directors of corporations. In McMurray v. Improvenet, Inc., No. 00 C 7137, 2001 WL 561376 *1 (N.D. Ill. May

22, 2001) an Illinois employee filed suit against his former employer and the president of that corporation, both non-residents of Illinois, alleging violations of the IWPCA and tortious interference with contract. The president of the corporation filed a motion to dismiss for lack of personal jurisdiction, which the court granted. Id. at *2. The president of the corporation had visited Illinois approximately four times on behalf of the corporation, once meeting with the plaintiff. Id. at *3. In addition, the president of the corporation had communicated with the plaintiff via telephone on numerous occasions. Id. The court stated that the single meeting with the plaintiff was "too tenuous to justify asserting personal jurisdiction over [the president of the corporation]." Id. In addition, the numerous telephone contacts would not support the exercise of personal jurisdiction because the substance of those communications revealed nothing about the plaintiff's specific claims for relief. Id. In sum, the court indicated: "We cannot say that, through these limited contacts, [the president of the corporation] could reasonably anticipate being required to defend himself here." Id. Additionally, the court indicated that assuming that minimum contacts could be established, "we would lack jurisdiction over [the president of the corporation] because he is protected by the 'fiduciary shield' doctrine." Id.

In Krok v. Burns & Wilcox, Ltd., No. 98 C 5902, 1999 WL 262125 *1 (N.D. Ill. April 16, 1999) an Illinois employee filed suit against his former employer and four officers and directors of that corporation, all non-residents of Illinois, alleging violations of the IWPCA, tortious interference with contract, and unjust enrichment. The four non-resident officers and directors of the corporation included: H. Kaufman, former owner of the corporation; A. Kaufman, Executive Vice President, Director, and current owner of the corporation; Price, Senior Vice President of the corporation; and Horton, Executive Vice President and Director of the corporation. Id. The four non-resident officers

and directors of the corporation filed motions to dismiss for lack of personal jurisdiction. Id. at *2. Two of the defendants, H. Kaufman and A. Kaufman, had only visited Illinois a few times a year to transact unrelated business, and the court dismissed them from the complaint. Id. at *3. The two remaining defendants, Price and Horton, visited Illinois for the purpose of meeting with the plaintiff, and subsequently terminated his employment at that meeting. Id. at *4. The court indicated that by traveling to Illinois to terminate the plaintiff's employment, Price and Horton performed an act which caused an injury in Illinois, thus subjecting them to the personal jurisdiction of the court to answer the plaintiff's claim of tortious interference with contract. Id. As to the plaintiff's claim of violations of IWPCA, the court indicated: "[The IWPCA count] arises out of a wage payment dispute, not a wrongful termination action. Thus, under 5/2-209(a)(1), this court should not exercise personal jurisdiction if [the IWPCA count] were standing alone." Id. However, the court subjected Price and Horton to personal jurisdiction in Illinois on the rationale that since they were subject to personal jurisdiction as to the tortious interference with contract claim, their "burden does not substantially increase by this court asserting jurisdiction over them as to [the IWPCA count]." Id. The court also rejected the arguments of Price and Horton that the fiduciary shield doctrine should prevent the court from exercising personal jurisdiction over them, based on the finding that Price and Horton were acting to serve their personal interests. Id.

In the present case, as compared with McMurray and Krok, there are even fewer contacts between Cipicchio, Allman and Illinois. It is undisputed that Cipicchio has never lived in Illinois, never owned property in Illinois, never paid taxes in Illinois, and never been involved in any litigation in Illinois. Cipicchio's only contacts with Illinois occurred in June of 2000 when he attended a conference in Illinois, and Cipicchio did not have any contact with Allman at that time.

In fact, Cipicchio has never had any contact with Allman, whether by way of telephone, mail, or electronic communication. The actions of Cipicchio cannot be said to indicate that he "purposefully availed" himself to Illinois. Viewed along a "minimum contacts" spectrum, the contact between Cipicchio and Illinois is virtually non-existent and completely unrelated to Allman's claims for relief. This court cannot say that Cipicchio could have reasonably anticipated being haled into court in Illinois, as a result of performing his duties for WorldCom outside of Illinois.

In short, Allman's syllogism based on the text of the IWPCA proves too much, and ignores the lessons of International Shoe and its progeny. Therefore, the court finds that Allman has failed to meet his burden of demonstrating that the court's exercise of personal jurisdiction over Cipicchio is proper as to Counts I and II of the amended complaint.

*B. Allman's Tortious Interference with Contract Claim for Relief*

Allman's alternative argument for subjecting Cipicchio to the personal jurisdiction of a court in Illinois is premised on the contention that Cipicchio's conduct qualifies as a tortious act, thereby subjecting Cipicchio to Illinois' long-arm statute, 735 Ill. Comp. Stat. 5/2-209(a)(2) (2003).

As indicated above, since the three inquiries may be collapsed into one, with an analysis of whether the exercise of personal jurisdiction would violate the United States constitutional law due process requirements as the pivotal inquiry, the court will analyze whether the contacts of Cipicchio with Illinois satisfy the requirements of federal due process. See Klump, 71 F.3d at 1371.

At bottom, Allman's alternative argument for personal jurisdiction reduces itself to an argument that personal jurisdiction is proper because Allman was injured in Illinois as a result of a decision made outside of Illinois that involved Cipicchio. To support this argument, Allman relies on the well-known case of Gray v. American Radiator and Standard Sanitary Corp., for the

proposition that "the place of a wrong is where the last event takes place which is necessary to render the actor liable." 176 N.E.2d 761, 763 (Ill. 1961). However, this argument misses later development in personal jurisdiction in the Illinois courts. The Illinois Supreme Court has explicitly rejected the contention that the Illinois long-arm statute applies to non-resident defendants whose only contact with Illinois is allegedly causing economic harm within the state. See R.W. Sawant & Co. v. Allied Programs Corp., 489 N.E.2d 1360, 1364 (Ill. 1986) (indicating "an economic loss which is felt in Illinois is not sufficient to confer jurisdiction in our courts when the acts occurred outside of Illinois"); see also Green v. Advance Ross Electronics Corp., 408 N.E.2d 1007, 1010 (Ill. App. 1980) ("While there may ultimately have been an indirect economic impact in Illinois, we do not believe that this type of tortious consequence, without more, constitutes sufficient contact with this state.").

Furthermore, whether Illinois statutory law properly grants jurisdiction is only one part of the inquiry, which at bottom must meet the requirements of federal due process. As indicated above, the actions of Cipicchio cannot be said to indicate that he "purposefully availed" himself to Illinois. When viewed along a "minimum contacts" spectrum, the contact between Cipicchio and Illinois is virtually non-existent and completely unrelated to Allman's claims for relief. This court cannot say that Cipicchio could have reasonably anticipated being haled into court in Illinois as a result of performing his duties for WorldCom outside of Illinois.

Therefore, the court finds that Allman has failed to meet his burden of demonstrating that the court's exercise of personal jurisdiction over Cipicchio is proper as to Count III of the amended complaint.

*C. Fiduciary Shield Doctrine*

Even accepting Allman's syllogism and alternative argument, and assuming *arguendo*, that

Allman's claims for relief were sufficiently related to Cipicchio's contacts with Illinois, this court would decline to exercise personal jurisdiction over Cipicchio based on the fiduciary shield doctrine.

"The fiduciary shield doctrine is a judicially created principle that precludes the exercise of personal jurisdiction over non-resident corporate agents or employees who are acting in the forum state in their role as corporate agents or employees." Sonja Larsen, Validity, Construction, and Application of "Fiduciary Shield" Doctrine - Modern Cases, 79 A.L.R.5th 587 (2000). The fiduciary shield doctrine is premised on the rationale that it is unfair to force non-resident corporate agents or employees to defend suits brought in a forum where their only relevant contacts are acts performed not for personal benefit but for the benefit of their employer. Id. The Illinois Supreme Court recognized the fiduciary shield doctrine in Rollins v. Ellwood, 565 N.E.2d 1302, 1317-18 (Ill. 1990). In explaining the fiduciary shield doctrine, and its legal underpinnings, the Illinois Supreme Court indicated:

> Thus, we find it to be unfair and unreasonable, under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts, to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal.

Id. at 1318. As interpreted by the federal courts in the Northern District of Illinois, "[t]here are three basic limitations on the fiduciary shield doctrine: where the defendant was motivated in part or solely by personal interest, as opposed to the interests of the corporation; where 'the defendant is the alter ego of the entity for which he is a fiduciary;' and, possibly, where the defendant was a director or officer who had discretion regarding whether the contacts occurred." Robinson v. Sabis Education Systems, Inc., No. 98 C 4251, 1999 WL 412642 (N.D. Ill. May 28, 1999) (citations omitted).

Allman has proffered nothing to refute Cipicchio's affidavit, which indicated that Cipicchio

did not benefit or serve his personal interests by causing an audit to be performed on Allman's commissions account and freezing Allman's commission bank account. Allman's allegations against Cipicchio, and the Defendants generally, are devoid of specific facts. Allman simply indicated that Cipicchio "knowingly" violated the IWPCA, and "purposefully" and "maliciously" interfered with Allman's employment contract rights. As was aptly stated by the district court in McMurray: "The adverbs 'willfully' and 'maliciously' are too general to describe a personal interest." 2001 WL 561376 at *4. Further, as a vice president in a national corporation, it cannot be argued that Cipicchio is the alter ego of WorldCom. In addition, Allman does not allege that Cipicchio had discretion whether the contacts occurred. In fact, Cipicchio had no relevant contacts with Illinois. Also, Cipicchio's actions were authorized by the Comp Plan, which Allman entered into with WorldCom, and cannot be said to be anything other than Cipicchio performing his duties as an employee of WorldCom in Mississippi.

Furthermore, judicial acceptance of Allman's personal jurisdiction arguments would result in a myriad of officers and directors of corporations being forced to defend themselves in litigation from Seattle to Key West, and every point in between where their corporations transact business, irrespective of their individual contacts with each forum state. Despite the technological advances made that enable the business world to span many borders, such a result would not be consistent with current conceptions of due process guaranteed by the Fourteenth Amendment.

## IV. CONCLUSION

For the foregoing reasons, Defendant, Michael Cipicchio's motion to dismiss Plaintiff, James Allman's complaint for lack of personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted.

IT IS SO ORDERED.

ENTER: Charles R Norgle

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 4-3-03